*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BRENDA J. PRUITT, | ) | |
| | ) | Supreme Court No. S-14687 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| v. | ) | Appeals Commission No. 10-032 |
| | ) | |
| PROVIDENCE EXTENDED CARE | ) | O P I N I O N |
| and SEDGWICK CMS, INC., | ) | |
| | ) | No. 6766 – March 29, 2013 |
| Appellees. | ) | |
| | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission, Laurence Keyes, Commission Chair.

Appearances: Brenda J. Pruitt, pro se, Tulsa, Oklahoma, Appellant. Colby J. Smith and Aaron M. Sandone, Griffin & Smith, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Carpeneti, Winfree, and Stowers, Justices. [Maassen, Justice, not participating.]

FABE, Chief Justice.

## I. INTRODUCTION

An employee filed an affidavit of readiness for hearing in her workers' compensation case approximately four years after her employer filed a controversion of her written workers' compensation claim. The employer petitioned to dismiss her claim based on the statutory deadline for a hearing request in AS 23.30.110(c). After a

hearing, the Alaska Workers' Compensation Board dismissed her claim, and the Alaska Workers' Compensation Appeals Commission affirmed the Board's decision. Because the employee did not file a timely request for a hearing and was not excused from doing so, we affirm the Commission's decision.

## II.    FACTS AND PROCEEDINGS

Brenda Pruitt worked as a licensed practical nurse at Providence Hospital in 2004. On March 10, 2004, Pruitt injured her back while pushing a medication cart. She had to turn the cart around to respond to a call, and in so doing, the cart got caught where the flooring changed from carpet to linoleum. When Pruitt tried to free the cart, she heard a popping sound and then felt pain in her left lower back.

Providence initially accepted the claim and paid disability benefits from April 17, 2004, through January 11, 2005. On February 2, 2005, it controverted temporary total disability (TTD), permanent partial impairment (PPI), reemployment, and medical benefits based on its doctor's opinion that Pruitt was medically stable and had no permanent impairment.

On February 8, 2005, an attorney filed a workers' compensation claim on Pruitt's behalf, seeking TTD, permanent total disability (PTD), further medical costs, a second independent medical evaluation (SIME), and attorney's fees and costs. Providence answered, denying all claims except the request for the SIME. Providence also filed a controversion on February 10, 2005, which raised the same issues and controverted the same benefits as its earlier controversion.

Providence deposed Pruitt on April 7, 2005. During the course of the deposition, Providence produced a report of injury for Pruitt's similar on-the-job injury with a different employer. It also produced a copy of a medical history form Pruitt had completed in 2003, prior to beginning work at Providence. On that medical history form, Pruitt denied "experienc[ing] any health problems or injuries connected with [her] past

jobs" or having "been under a doctor's care for back problems," and stated that she had never had an on-the-job injury. During her deposition, Pruitt testified that she had experienced an injury very similar to the one at Providence when she was working at the Fairbanks jail in 1995. She had also filed a stress-related workers' compensation claim when she worked at Bassett Community Hospital in Fairbanks. Pruitt was unsure whether she had filed another stress claim when she was working for a contractor at Hiland Mountain Correctional Center. She also testified that she hurt her back and knee in a slip-and-fall at a store in 1998.

Pruitt's attorney withdrew in May 2005, mailing a copy of the withdrawal notice to Pruitt on May 5, 2005. Pruitt later testified that the mailing address on the withdrawal notice's certificate of service was her mailing address in May 2005. On July 1, 2005, Providence filed another controversion notice, this time controverting all benefits, and it mailed the notice to Pruitt. The July controversion was based on AS 23.30.022[1] and on a supplemental report by Providence's doctor.

A prehearing conference was held on February 8, 2006, which Pruitt attended by telephone. According to the prehearing conference summary, "[t]he chair directed Ms. Pruitt to call our office and make an appointment with a Workers'

---

[1] AS 23.30.022 provides:

> An employee who knowingly makes a false statement in writing as to the employee's physical condition in response to a medical inquiry, or in a medical examination, after a conditional offer of employment may not receive benefits under this chapter if
>
> (1) the employer relied upon the false representation and this reliance was a substantial factor in the hiring; and
>
> (2) there was a causal connection between the false representation and the injury to the employee.

Compensation Technician for assistance in filing an [affidavit of readiness for hearing], if she decides that she wants to continue with the case." The summary also indicates that Pruitt was "reminded" that she had to file an affidavit requesting a hearing within the time limits set out in AS 23.30.110(c); the relevant part of the statute was included in the prehearing conference summary.[2] A copy of the summary was served on Pruitt on February 9, 2006. Pruitt did not file an affidavit of readiness for hearing at that time.

Pruitt left Alaska in 2007 and moved to Oklahoma. She received long-term disability from Providence, but in 2008, after a medical evaluator for the long-term disability insurance company reported that Pruitt's only disabling condition was depression, those benefits stopped. Pruitt filed a new application for workers' compensation benefits on August 7, 2009, making claims for all benefits. On August 26, she filed an affidavit of readiness for hearing for her February 8, 2005 workers' compensation claim. Providence filed a notice of controversion of the 2009 claim on September 2, 2009, raising a number of defenses, including the defense that the affidavit of readiness for hearing was untimely under AS 23.30.110(c). In October 2009 Providence filed a petition to dismiss the 2005 claim based on AS 23.30.110(c) and AS 23.30.022.

The Board held a hearing on the petition to dismiss. Pruitt represented herself and was the only witness. Providence argued that Pruitt's claim should be dismissed under AS 23.30.110(c) because she failed to file anything within two years of the 2005 controversions. It argued in the alternative that her claim should be barred because of her misleading answers on the 2003 employee health questionnaire.

---

[2]     AS 23.30.110(c) provides in part, "If the employer controverts a claim on a board-prescribed controversion notice and the employee does not request a hearing within two years following the filing of the controversion notice, the claim is denied."

Pruitt testified that she had not received the notice of withdrawal from her attorney, although she agreed that the address on the certificate of service was her mailing address in May 2005. She also testified that she was under the impression that her attorney would submit or had submitted the necessary paperwork for her claim. She did not remember the details of the February 2006 prehearing conference, nor did she remember getting a copy of the prehearing conference summary. Pruitt testified that she "didn't even think of" the fact that her attorney was not at the prehearing conference in 2006 and so did not realize then he was no longer representing her. She indicated that she had no contact with the attorney from the time she left Alaska until sometime in 2009, when she contacted him again. She allowed that she had frequently submitted copies of her medical records to Providence but explained that she was sending information to Providence in relation to her long-term disability claim rather than workers' compensation claims.

The Board dismissed Pruitt's claim pursuant to AS 23.30.110(c) and retained jurisdiction over a possible denial of benefits based on AS 23.30.022. The Board decided that Pruitt's statements at different times were inconsistent and not credible. It also found her statement that she did not understand the workers' compensation process to be not credible. And it found not credible her statements that she did not know her attorney had withdrawn until 2009 and that she did not know that she had to request a hearing within two years.

The Board decided that Pruitt had not "establish[ed] a legal excuse" for failing to file a timely affidavit of readiness for hearing and found that the Board had met its duty to inform Pruitt of the statutory deadline. The Board determined that Pruitt was motivated to take action again in her workers' compensation case in 2009 because her long-term disability benefits were discontinued in August 2008. The Board dismissed

her case under AS 23.30.110(c) and decided that it did not need to reach the question of denial of benefits under AS 23.30.022.

Pruitt appealed to the Alaska Workers' Compensation Appeals Commission, arguing that because of her mental condition and medication she was unable to understand fully what she was required to do. The Commission initially reversed the Board decision and remanded for further fact finding. The Commission was concerned that Pruitt had adequately raised a question about her mental competence and ability to understand the notice about the deadline for filing an affidavit of readiness for hearing, and it remanded to the Board for further factual findings on the issue.

But Providence asked for reconsideration, arguing that the Board had in fact made adequate findings on Pruitt's competence, pointing to the Board's findings that Pruitt was not credible when she said that she (1) did not understand the workers' compensation process, (2) was unaware for four years that her attorney had withdrawn, and (3) did not know she had to request a hearing within two years. Providence also contended that Pruitt's mental health records in the record before the Board did not in any way imply she was incompetent.

The Commission reconsidered its decision and, on reconsideration, affirmed the Board. The Commission concluded that substantial evidence supported the Board's finding that "Pruitt understood what was required of her under AS 23.30.110(c)." Because the Board found that Pruitt understood the statutory requirement and failed to file an affidavit of readiness for hearing within the statutory deadline, the Commission affirmed the Board's dismissal of her 2005 claim.

Pruitt appeals.

## III.    STANDARD OF REVIEW

In an appeal from the Alaska Workers' Compensation Appeals Commission, we review the Commission's decision.[3]  We independently review the Commission's legal conclusion that substantial evidence in the record supports the Board's findings, which "necessarily requires us to independently review the record and the Board's factual findings."[4]  The Board has the sole power to determine the credibility of a witness.[5]

## IV.    DISCUSSION

### A.    The Commission Properly Affirmed The Board's Dismissal Of Pruitt's Claim.

Pruitt argues here that she should be excused from the statutory deadline for requesting a hearing because she was relying on her attorney to ask for one.  She asserts that her failure to comply with the deadline was "excusable neglect" because she thought she was getting workers' compensation benefits and so "had no reason to believe that anything was out of the ordinary."  She also contends that Providence has not shown prejudice in the late filing "other than by [her] non-compliance" with AS 23.30.022.

Pruitt's claim was dismissed because she failed to meet the statutory deadline for filing a request for hearing.  Alaska Statute 23.30.110(c) provides in part:

> Before a hearing is scheduled, the party seeking a hearing
> shall file a request for a hearing together with an affidavit
> stating that the party has completed necessary discovery,
> obtained necessary evidence, and is prepared for the
> hearing. . . .  If the employer controverts a claim on a board-

---

[3]    *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010) (citing *Barrington v. Alaska Commc'ns Sys. Grp., Inc.*, 198 P.3d 1122, 1125 (Alaska 2008)).

[4]    *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

[5]    AS 23.30.122.

prescribed controversion notice and the employee does not request a hearing within two years following the filing of the controversion notice, the claim is denied.

We have compared the failure-to-prosecute provision of AS 23.30.110(c) to a statute of limitations[6] and interpreted the term "claim" in this statutory subsection to mean a written application for benefits.[7] In *Kim v. Alyeska Seafoods, Inc.*, we decided that substantial rather than strict compliance with AS 23.30.110(c) could avoid claim denial.[8] We observed there that the Commission had recognized the Board's power to excuse strict compliance with the statute for equitable reasons.[9] But we also said that we did "not suggest that a claimant can simply ignore the statutory deadline and fail to file anything."[10]

Here, Pruitt failed to file anything within the allotted time. She filed a written application for benefits in February 2005. Providence filed two controversions: one in February 2005, shortly after she filed her written application, and one in July 2005, after her deposition. Pruitt needed to request a hearing by July 1, 2007, at the latest, to avoid the time bar of AS 23.30.110(c). She did not file anything indicating she wanted to prosecute the 2005 written claim until August 2009, well after the statutory deadline expired.

---

[6]    *Tipton v. ARCO Alaska, Inc.*, 922 P.2d 910, 912 n.4 (Alaska 1996) (citing *Jonathan v. Doyon Drilling, Inc.*, 890 P.2d 1121, 1122 (Alaska 1995)).

[7]    *Jonathan*, 890 P.2d at 1124.

[8]    197 P.3d 193, 196-97 (Alaska 2008).

[9]    *Id.* at 197 (quoting *Morgan v. Alaska Reg'l Hosp.*, AWCAC Dec. No. 035 at 17-18 (Feb. 28, 2007)).

[10]    *Id.* at 198.

Pruitt does not explicitly argue that filing the 2009 affidavit constituted substantial compliance with the deadline, but she summarizes *Kim* in her brief.[11] Providence argues that the record supports the determination that Pruitt did not substantially comply with the statute. The Commission decided that Pruitt had not substantially complied with AS 23.30.110(c); the Board did not differentiate between substantial and strict compliance — it simply dismissed her February 2005 claim pursuant to AS 23.30.110(c).

We agree with the Commission that Pruitt did not substantially comply with the statute. The prehearing conference summary from February 2006 shows that the Board told Pruitt to contact staff at the Board "for assistance in filing an [affidavit of readiness for hearing], if she decides she wants to continue with the case." It also gave Pruitt some warning, in addition to the warnings on the notices of controversion, that she had to file a request for a hearing within two years of the controversions. Yet in spite of this information, Pruitt took no action in her case for more than three years, waiting until her long-term disability ended to take action on her workers' compensation claim. Her 2009 hearing request cannot be considered substantial compliance with the statute.

Pruitt argues here that she should be excused from complying because she relied on her attorney to protect her interests. Providence responds that substantial evidence supports the Commission's decision that Pruitt's failure to comply with the statute was not excused.

The Board found that Pruitt's "assertion she was unaware her attorney withdrew and was relying upon him to file the necessary paperwork lacks credibility."

---

[11]     We hold the pleadings of pro se litigants to less stringent standards than those of lawyers. *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1011 (Alaska 2009) (citing *DeNardo v. Calista Corp.*, 111 P.3d 326, 330 (Alaska 2005)).

The Board "has the sole power to determine the credibility of a witness."[12] Its credibility findings are binding on the Commission.[13] The Board's credibility determination disposes of Pruitt's argument that her reliance on her attorney excused her from complying with the statute. If Pruitt was not truthful in asserting that she relied on her attorney to file the affidavit of readiness for hearing, this purported reliance cannot excuse her noncompliance. The Commission thus correctly concluded that substantial evidence in the record supported the Board's determination that Pruitt did not substantially comply with AS 23.30.110(c).

In its first decision, the Commission decided the Board did not make adequate findings about whether Pruitt's noncompliance with AS 23.30.110(c) should be excused due to mental incompetence. Pruitt argued in her brief to the Commission that her mental health problems, including depression, interfered with her ability to understand what was required of her and to comply with the statute. She inquired at the Board hearing about the possibility that a guardian could be appointed for her. In its reconsideration request, Providence set out evidence from the Board's record indicating that Pruitt was in fact competent during the course of the proceedings, including chart notes from a psychologist and a mini mental status exam. On reconsideration, the Commission reversed course and affirmed the Board.

The Commission correctly concluded on reconsideration that the Board made adequate findings. The Board specifically found that Pruitt's assertion that "she did not understand the workers' compensation process lack[ed] credibility." It also found not credible her "assertion she that she did not know she had to request a hearing

---

[12]    AS 23.30.122.

[13]    AS 23.30.128(b).

within two years." In spite of Pruitt's mental health condition,[14] the Board did not believe her insistence that she did not understand the steps she had to take to preserve her claim. The Board's credibility determination negates any argument that Pruitt's failure to file a timely hearing request should be excused because of lack of understanding.

## V.   CONCLUSION

We AFFIRM the Commission's decision.

---

[14]   Pruitt was diagnosed with depression and took medication for it for some time.